John L. Amsden, Esq.
Justin P. Stalpes, Esq.
Anthony F. Jackson, Esq.
BECK & AMSDEN, PLLC
1946 Stadium Drive, Suite 1
Bozeman, MT 59715
Tel:   (406) 586-8700
Fax:   (406) 586-8960
amsden@becklawyers.com
justin@becklawyers.com
anthony@becklawyers.com

Scott E. Carlson, Esq.
CARLSON LAW OFFICE
PO Box 1814
Kalispell, MT 59903-1814
Tel:   (406) 212-1901
Fax:   (406) 257-1783
carlsonlaw@montanasky.com

*Attorneys for Plaintiffs*

\* \* \* \* \* \* \*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
GREAT FALLS DIVISION

\* \* \* \* \* \* \*

| | |
|---|---|
| RANDALL WINTER, individually and as Personal Representative of the ESTATE OF KYLE WINTER,<br><br>Plaintiffs,<br><br>v.<br><br>PIONEER DRILLING SERVICES, LTD, a Texas corporation; WHITING PETROLEUM CORPORATION, a Delaware corporation; and JOHN DOES 1-5,<br><br>Defendants. | Case No.<br><br>**COMPLAINT FOR DAMAGES AND JURY DEMAND** |

Plaintiffs, by and through counsel, hereby complain, state and allege as follows:

## JURISDICTION AND VENUE

1. Plaintiff Randall Winter is a resident of Kalispell, Montana. Randall Winter is the father of Kyle Winter. Randall Winter has been duly appointed as the personal representative of the Estate of Kyle Winter. Kyle Winter was fatally injured on January 31, 2013, and his Estate has been duly established under Montana law.

2. Defendant Pioneer Drilling Services, LTD (Pioneer) is a Texas corporation with its principal place of business in San Antonio, Texas. Pioneer does business in numerous states, including Montana. Pioneer owns property and offices in Havre and Cut Bank and is a resident of the Judicial District of Montana, Great Falls Division.

3. At all times relevant hereto, Defendant Whiting Petroleum Corporation (Whiting) is a Delaware corporation with its principal place of business in Denver, Colorado. Whiting does business in numerous states, including Montana. Whiting owns thousands of acres of Montana property and several producing wells, including in Sheridan, Roosevelt and Richfield counties and is a resident of the Judicial District of Montana, Great Falls Division.

4. John Does 1-5 are individuals or entities not yet known to Plaintiffs

who bear liability for Plaintiffs' damages.

5. The Court has jurisdiction over the named Defendants pursuant to 28 U.S.C. § 1332(a)(1). The amount in controversy exceeds $75,000, exclusive of interest and costs. Further, while Plaintiff Randall Winter is a citizen of Montana, the Defendants are citizens of different States.

6. Venue is proper pursuant to 28 U.S.C. § 1391(b)(1), which allows for filing in any judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located.

## BACKGROUND

7. This case arises out of a fatal injury to Kyle Winter on January 31, 2013, at a drilling rig owned and operated by Defendant Pioneer (the "Drilling Rig"). The Drilling Rig was located on a well site owned by Defendant Whiting located near the intersection of Highway 1806 and County Road 10 in Watford City, North Dakota (the "Well Site").

8. Upon information and belief, Defendant Whiting contracted with Defendant Pioneer to extract oil at the Well Site.

9. Upon information and belief, Pioneer and/or Whiting subcontracted with Heller Casing to provide casing services ("case the well") at the Well Site.

10. Casing a well involves running steel pipe down the inside of a recently drilled well to prevent the well from collapsing. The casing is fabricated in

sections that are linked together to form casing strings.

11. On January 31, 2013, Kyle Winter and at least two other Heller Casing employees and two Pioneer employees were inserting seven (7) inch casing into a well hole at the Well Site. The casing is placed into the well hole by a device called a Top Drive. The Top Drive lifts a section of casing and places it in a vertical position above the well hole. The sections of casing are connected using Power Tongs. Power Tongs are a large wrench that is used to link, or unlink, sections of casing.

12. A "Power Tongs Cable" suspends the Power Tongs about four (4) feet above the drill floor. The Power Tongs utilized at the time were McCoy KT9625 Casing Tongs. They weighed at least 1,200 pounds. After the sections of casing are connected through the use of the Power Tongs, the Top Drive pushes the casing down into the well hole.

13. On the date in question, a driller employed by Pioneer (the "Pioneer Driller") was operating the Top Drive. The design of the Drilling Rig allows the Driller to run the Top Drive from the "Doghouse." The Doghouse is an enclosed, protected area without a direct line of sight to the Power Tongs. The Heller Casing employees were located on the drill floor, which is the point at which the casing descends underground.

14. As is customary in its operation, the Pioneer Driller released the

casing in the well hole and was lifting the Top Drive in order to grab another casing section. As the Top Drive was lifted, it caught on the Power Tongs Cable. The Pioneer Driller then lifted the Power Tongs approximately fifteen (15) feet above the drill floor. Although foreseeable to the Pioneer Driller, the Pioneer Driller is not supposed to lift the Power Tongs up by catching on the Power Tongs Cable.

15. From his location on the drill floor, Kyle Winter saw the Top Drive lift the Power Tongs dangerously above the drill floor. Kyle then attempted to warn the Pioneer Driller. In order to do so, Kyle had to leave the safe zone, move around an A Frame rig leg and signal the assistant driller.

16. The assistant driller notified the Pioneer Driller, who then hit the Top Drive brake, which stopped the raising of the Top Drive. However, the Pioneer Driller had raised the Power Tongs high enough that the Power Tongs Cable detached from the Power Tongs, and the Power Tongs fell to the drill floor landing on Kyle Winter.

17. Kyle Winter lived for an appreciable length of time and then died from the trauma to his chest and abdomen.

18. The Power Tongs Cable was connected to the Power Tongs by an open hook. The hook would remain in place only as long as downward pressure was maintained. Customarily, prudent drillers use a more secure means of

fastening the Power Tongs to the Power Tongs Cable so that, even if tension was reduced, the Power Tongs could not fall to the rig floor.

19.     Defendants failed to provide a secure means to fasten the Power Tongs to the hook on the Power Tongs Cable. As a result, Heller Casing employees were forced to use common black electrical tape to secure the hook to the Power Tongs. On January 31, 2013, the temperature reached negative 20 degrees Fahrenheit, which made even the common electrical tape brittle and unreliable.

20.     Defendant Pioneer possessed a set of power tongs at the Well Site designed for use on the Drilling Rig that were separate and different than Heller Casing's Power Tongs. Pioneer's power tongs had a means of securing the hook to the cable so that it would not fall off. Heller Casing was not allowed to use these appropriate power tongs. Had these power tongs, or a more effective means of securing the Power Tongs to the Power Tongs Cable, been utilized, Kyle Winter's death would have been prevented.

21.     Defendant Pioneer is directly liable for the failure to inspect the dangerous equipment rigged with inappropriate and dangerous electrical tape, the failure to notice and mitigate the dangerous condition created by the lifting of the Power Tongs, the failure to keep and maintain a lookout for the dangerous condition and for the conduct of its employees in negligent operation of the

Drilling Rig. In addition, on information and belief, Defendants retained express, actual and/or implied control over the workplace environment and/or the method of work, including safety of Kyle Winter and other Heller Casing employees.

22. Extensive training and safety precautions are required for the operation of a drilling rig. The operation of a drilling rig, including the placement of casing, is intrinsically and/or inherently dangerous.

## COUNT 1 - NEGLIGENCE

23. Plaintiffs re-allege and incorporate the allegations in this Complaint as if fully set forth herein.

24. As a general/prime contractor, and/or as the owner, Defendants had a duty to protect against intrinsically and/or inherently dangerous activity.

25. As a general/prime contractor, and/or as the owner, Defendants had a duty to provide for the safety of the subcontractors and their employees on the jobsite.

26. On information and belief, Defendants retained express, actual and/or implied control by contract over the workplace environment and/or the method of work, including safety of Heller Casing's employees, including Kyle Winter.

27. Defendants retained and/or exerted control over the manner of the work being performed by Heller Casing, giving rise to duties to provide for the safety of subcontractor employees, including Kyle Winter.

28. Defendants breached their duties by failing to provide appropriate instruction, failing to appropriately supervise, failing to implement protective measures, failing to provide safety precautions, failing to provide a safe place to work, failing to employ safety measures for the protection and welfare of the employees on the jobsite, failing to take the necessary steps, precautions, and/or remedial measures to prevent the incident as set forth above, failing to operate the Drilling Rig in a safe and prudent manner and otherwise failing to abide by their general duty of care.

29. By reason of Defendants' breaches, Plaintiffs suffered compensable damages in an amount to be proven at trial.

## COUNT 2 - PUNITIVE DAMAGES

30. Plaintiffs re-allege and incorporate the allegations in this Complaint as if fully set forth herein.

31. Defendants deliberately acted in conscious or intentional disregard of, or indifference to, the high probability of injury to Kyle Winter by failing to take the necessary steps, precautions and/or remedial measures to prevent the incident as set forth above, including by not allowing Heller Casing to use the appropriate power tongs which would have prevented Kyle Winter's death.

32. Plaintiffs are entitled to punitive damages because Defendants acted in such conscious or intentional disregard of, or indifference to, the high probability of injury to Kyle Winter.

### REQUEST FOR JURY TRIAL

Plaintiffs request that all factual issues be tried to a jury.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs pray for Judgment against Defendants, jointly and severally, as follows:

1. For judgment in favor of Plaintiffs and against Defendants;

2. For compensatory damages;

3. For punitive damages;

4. For costs and interest as allowed by law; and

5. For such other and further relief that this Court deems just and proper.

RESPECTFULLY SUBMITTED AND DATED, this 24th day of March 2014.

        BECK & AMSDEN, pllc

        By:   /s/Justin P. Stalpes
               Justin P. Stalpes, Esq.

        *Attorney for Plaintiffs*